*Western Dist.*
*October*, 1831.

FULTON'S HEIRS
ET ALS.
*vs.*
CURTIS'S HEIRS
ET ALS.

So in a sale from one partner to another, of property, made *communi dividendo*, the vendee is not presumed to take the property at his risk, unless he expressly assume it, and if he suffers lesion of one fourth, he has his action of rescission.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court, be affirmed with costs.

---

**FULTON'S HEIRS ET ALS. *vs.* ADMINISTRATOR OF CURTIS'S HEIRS ET ALS.**

3L 191
51 1643

APPEAL FROM THE COURT OF PROBATES FOR THE PARISH OF RAPIDES.

The curator of minors owes them interest on all sums due by him to the estate, from the day of his appointment, if they were due. If not due, only from the day of payment.

WESTERN DIST. The curator owes interest for all sums from the time they came into his
October, 1831.      hands, unless he shows he put them out at interest.

FULTON'S HEIRS    If on an opposition to the homologation of a tableau, a creditor has a special
ET ALS.             judgment, altering in part the situation or amount of his claim, and
vs.               another complains of this alteration, and appeals, the appeal must be
CURTIS'S HEIRS      taken from the special judgment complained of, and not from the general
ET ALS.             judgment of homologation.

Unless the appeal is taken from the special judgment, its merits cannot be
gone into on an appeal from the general one of homologation, but has the
force of *res judicata.*

In August, 1828, Isaac Thomas, syndic of the insolvent
estate of R. H. McWaters, deceased, filed his tableau of dis-
tribution and classification of the debts due by and owing to
the estate, and prayed for its homologation.

The judge of probates changed the amount and rank of
the privileges and debts due the plaintiffs, from their position
on the tableau by reducing them; and allowed Curtis's estate
as a creditor to a much larger amount than was allowed it
on the tableau, giving it a higher rank; also reduced the
plaintiff's claim still further, to give preference to J. M. Sol-
libellas, an opposing creditor.

McWaters had been appointed in his lifetime tutor to the
minor heirs of Curtis. He died without rendering any
account of his tutorship. But there was a note of his pay-
able to Curtis's estate, which was found cancelled after his
death. Curtis's administrator urged that the amount of this
note must be considered as coming into his hands as tutor, at
the time of his appointment and that interest must be charged.
The probate judge entered judgment on this item according
to the demand of Curtis's administrator, charging McWaters
with the amount of the note as a privileged claim, allowing
interest on it from the date of his appointment as tutor.
There was then a general judgment of homologation, from
which the plaintiffs appealed.

*Thomas,* for the plaintiffs and appellants.

WESTERN DIST.
*October*, 1831.

FULTON'S HEIRS
ET ALS.
*vs.*
CURTIS'S HEIRS
ET ALS.

1. Our appeal is founded on the opposition of the administrator of the heirs of Curtis to the homologation of McWaters's tableau. In this opposition the heirs of Curtis were allowed a preference on simple debts due them by McWaters in his lifetime, and made to have precedence over his special mortgage creditors, on the supposed ground that when he became tutor to Curtis's heirs, his private debts were to be considered as contracted by him as tutor, and secured by tacit mortgage.

2. This opposition was allowed on the additional ground that interest was allowed the heirs on various sums received by McWaters as their tutor, from the time of receiving them, and which had been received for the value of articles not accounted for in the inventory. No account having been made of his tutorship, and from the rendition and liquidation of which alone the appellants contend, can they be made responsible for interest.

3. In relation to the opposition of Solibellas, the heirs of Fulton say that the payment received from McWaters was a general one, and was not by the payor imputed to any particular debt; and that the plaintiffs, as his creditors, had a right to impute it to the purchase of the land; that they had so imputed it in good faith, and could not now be made losers by a different imputation.

*Scott*, for the defendant and appellees.

1. The plaintiffs contend that a privilege was improperly allowed to Curtis's heirs, for the amount of a note, they held on McWaters, which had been delivered to the administrator of Curtis's estate after McWaters's death, cancelled.

2. We contend that the legal mortgage given by law, upon the property of tutors and curators attaches for their responsibility. That McWaters acting as the tutor of the minor heirs of Curtis, could not be appointed, unless he had previously paid his note. If he had paid it and the money went into his hands, after his appointment, it was clearly money received by him, and for which his property was legally bound.

WESTERN DIST.
October, 1831.

FULTON'S HEIRS
ET ALS.
vs.
CURTIS'S HEIRS
ET ALS.

The curator of minors owes them interest on all sums due by him to the estate, from the day of his appointment, if they were due. If not due, only from the day of payment.

The curator owes interest for all sums from the time they came into his hands, unless he shows he put them out at interest.

If on an opposition to the homologation of a tableau, a creditor has a special judgment, altering in part the situation or amount of his claim, and another complains of this alteration and appeals, the appeal must be taken from the special judgment complained of, and not from the general judgment of homologation.

Unless the appeal is taken from the special judgment, its merits cannot be gone into on an appeal from the general one of homologation, but has the force of *res judicata*.

3. If on the other hand, the note had went into his hands and he cancelled it, he made himself liable as tutor, for the amount. It was an act of responsibility for which the minors had a legal mortgage. *Louisiana Code,* 354.

*Martin, J.* delivered the opinion of the court.

The heirs of Fulton and Thomas, are appellants from the judgment of homologation of the tableau of distribution.

Thomas complains that interest is allowed on various debts, not properly bearing interest in the curator's hands.

As to the sums due by the curator himself, he owes interest as curator from the day of his appointment, if they were previously due ; otherwise only from the day of payment.

As to the sums he received from the debts of the estate, he owes interest from the day they came to his hands, unless he shows he put them out at interest, soon afterwards.

The calculations of interest, appear to have been made on correct principles, and therefore the complaint was properly disregarded.

Fulton's heirs complain that their claim was improperly reduced on the application of Sollibellas ; but the appellee urges that this claim is passed into the authority of *res judicata.* The syndic filed the tableau, which was opposed by Sollibellas, and a special judgment rendered sustaining the objection in part, and the amount fixed by this judgment, was carried on the tableau ; and the present appeal is taken from the judgment of homologation. It is objected, the appeal should be taken from the special judgment on the opposition, and not from the general one of homologation.

We think, it ought to have been taken from the first, which was rendered contradictorily between the party alleging himself to be injured, by the syndics, the proper representatives of those against whom relief was sought. The doctrine on this subject, will be found in the case of *Saul* vs. *his Creditors.* 7 *Martin, N. S.* 446–47.

The first judgment should have been appealed from ; otherwise it may be incidently re-examined by all the creditors separately.

It is clear, the judge in acting on the final tableau of distribution, could not have taken any other *datum*, for the amount due to this particular creditor ; but that already fixed by the special judgment, and if this be so, the merits of that judgment, cannot be gone into on an appeal from the judgment of homologation, for the first judgment has the force *res judicata*, so long as it stands unreversed :   And the judgment reversing that of the homologation, would still leave the former untouched.

It is, therefore, ordered, adjudged and decreed, that the judgment of the Court of Probates be affirmed, with costs.