## Monget, Tutor *v.* Walker et al.

In an action by an under-tutor to remove a tutor, the accounts of the latter may be investigated for the purpose of proving his mal-administration; but an under-tutor has no authority to require a rendition of accounts by the tutor. After the dismissal of a tutor the right to call for an account belongs exclusively to the new tutor.

A judgment in an action instituted by an under-tutor against a tutor praying for his removal and for an account of the tutorship, may be annulled so far as to it compels the tutor to account to the under-tutor, and be left in force so far as it decrees the removal of the tutor.

A tutor owes his wards in all cases the funds which he receives belonging to them, with legal interest, and he can only shield himself from that responsibility by investing those funds, in their name, under a judgment of the court, rendered on the advice of a family meeting.

Where a tutor permits notes belonging to the estate of the minor to be barred by proscription, without showing any attempt to collect them, or offering evidence to prove that they could not be collected, he will be liable to the minor for their amount.

APPEAL from the District Court of East Baton Rouge, *Burk*, J. *Lacey*, for the plaintiff. *Elam*, for the appellant, *Walker*. The judgment of the court was pronounced by

Rost, J. In 1835, *Parmley A. Walker* was appointed tutor of the minor children of the late *Alexander Wood* and *Rebecca Woodruff*. The property of the minors was sold on long credits, and the tutor received the proceeds of the sale. In 1845, the under-tutor instituted an action to deprive him of the tutorship, on various grounds alleged in the petition. There was also a prayer that he render an account of his administration. In answer to this petition the tutor consented to relinquish the tutorship. He further averred that he had invested the funds of the minors as they came to his hands, on what was deemed, at the time of the investments, ample security. That, in consequence of the monetary crisis of 1837, some of those securities had become unavailable, but that owing to the conventional interest he had received, the assets in his hands exceeded by more than $4,000 the legal claim of the minors against him, and were more than sufficient to satisfy it. The notes and judgments described in his account were brought into court, and he asked that the account be approved, that the notes and obligations therein described be received in full satisfaction of the sum due by him to the minors, and that he be discharged from all further responsibility as tutor;

and his bond cancelled. In the absence of the plaintiff's counsel, the tutor in person had the case fixed, and tried it *ex parte*.

The judgment rendered was in these words:

" Finding the account of the tutor to be correct, and the assets offered by him sufficient to meet his liability, it is ordered that the account be approved and allowed, and that the notes, obligations and cash, the cash being fifty dollars, deposited in court by the defendant, be received in full of all claims against him as tutor. It is further ordered that he be discharged from further duties, responsibilities or liabilities as tutor, that his bond be cancelled and annulled, and that the legal mortgage resting upon his property be released."

The present plaintiff was subsequently appointed tutor, and, a large portion of the notes and accounts surrendered by *Walker* having proved valueless, he submitted the matter to a family meeting, and, on their advice and recommendation, returned to *Walker* such of the claims given by him in payment as were deemed unavailable, and instituted this action to annul the judgment of the Court of Probates, so far as it received those notes and accounts in payment of *Walker's* indebtedness to the minors; to compel him to render a new account; and to reinstate the legal mortgage raised by said judgment.

The answer of the defendant is that, the account rendered by him was duly homologated; that he has been legally discharged by a judgment acquiesced in by the plaintiff, who has no longer any right to question its correctness; that more than one year elapsed between the rendition of that judgment and the institution of the present action, which is, therefore, barred by prescription.

The judgment in the first instance was, " that the judgment of the Probate Court be avoided and set aside, so far as it discharges *Walker* from all liabilities as tutor, and receive the notes and judgments set forth in his account in payment of his indebtedness to the minors; that the plaintiff recover of *P. A. Walker*, the sum of $5,958 18, with legal interest; that all the property belonging to *Walker*, from the day of his appointment as tutor, be decreed to be subject to the minors' mortgage and privilege, and that certain property described in the petition, and shown to belong to *Walker*, be seized and sold to satisfy this judgment." The amount of the judgment was reduced by remittiturs entered, and by other credits, to $3,589 67. The defendant, *Walker*, then took a devolutive appeal.

One of the grounds urged against the validity of the judgment of the Probate Court is that, it was rendered *ex parte*, because provoked by the under-tutor, who might well institute proceedings to deprive *Walker* of the tutorship but has no authority to appear in behalf of the minors, so far as the suit involved a rendition of accounts by the tutor.

We hold this objection to be fatal. The under-tutor is without capacity to represent the minors in such a case; after the dismissal of the tutor, the right to call for an account belongs exclusively to the new tutor appointed. *McGehee* v. *Dupuy*, 7 Rob. 231. In an action to deprive the tutor of the tutorship, the under-tutor may undoubtedly investigate his accounts for the purpose of proving his maladministration; but, on that issue, no judgment accepting the accounts can be rendered.

The under-tutor being disqualified by law from appearing in the suit, so far as it involved the rendition of the tutor's accounts, the discharge of the tutor, the cancelling of the bond, and the raising of the general mortgage, were unauthorized by law, and the nullity of the judgment may be demanded at any time. C. P. art. 606, 612.

MONGET
*v.*
WALKER.

It is urged that the judgment cannot be annulled in part; and that, if it is entirely annulled, *Walker* is still tutor, and the plaintiff has no capacity to appear for the minors. The nullity being placed by the court upon the want of authority of the under-tutor to represent the minors, there is no reason why the judgment should not remain valid, so far as the authority existed. But if, on other grounds, the entire judgment was null, the nullity would not avail the defendant.

*Walker* was not deprived of the tutorship by the judgment of the court against his own consent. He resigned the trust voluntarily, dealt afterwards with the plaintiff as tutor, and has taken no exception to his capicity to sue. It is now too late to do so.

That the Probate Court could not receive in payment of *Walker's* indebtedness to the minors, notes and judgments which formed no part of their assets when he was appointed, is too clear for argument. These investments were made upon his own responsibility, and it would be strange indeed if he could thus be permitted to speculate upon events, retaining the profits, if any were made, and throwing upon his wards the losses attending his private transactions. The tutor owes his wards in all cases the funds which he receives belonging to them with legal interest, and he can only shield himself from that responsibility by investing those funds, in their name, under a judgment of the court, rendered on the advice of a family meeting.

The plaintiff has the undoubted right to compell *Walker* to account, and to enforce against him any judgment he may obtain. *Walker*, after he ceased to be tutor, stood as any other debtor of the minors.

The defendant contends that if the judgment is otherwise well founded in law, further deductions should have been made from it, and he states in his brief the items which should, in his opinion, have been allowed. We are unable to discover any error, in that respect, in the judgment. The evidences of debt were returned to *Walker*, as they had been received from him. Those of the notes returned to him, which originally formed part of the minors' assets were properly charged to him after he had suffered them to be lost by prescription, without showing any attempt to collect them, or offering evidence to prove that they could not be collected.

*William F. Tunard* and *S. H. Shipley* were also made parties defendants, and the plaintiff asked that certain property acquired by them from *Walker* might be subjected to the legal mortgage of the minors, or these parties compelled to pay over to him the price thereof, if *Walker* had not already received it; but as there is no final judgment on these issues, and no appeal properly before us in relation to them, we cannot pass upon them.

It is, therefore, ordered that the judgment rendered in favor of the plaintiff, *Parmley A. Walker*, be affirmed, with costs.