(122 So. 280)

No. 28458.

### In re DUPLECHAIN'S ESTATE.

April 22, 1929.

H. Gordon Brunson, of Crowley, and John W. Lewis, of Opelousas, for appellants.

R. Lee Garland, of Opelousas, for appellee.

THOMPSON, J. This is an appeal by the heirs of Duplex Duplechain from an adverse judgment on their opposition to an account filed by their paternal uncle in his capacity as "curator of the minors."

The opponent's father died in the year 1908, leaving an estate consisting of movable and immovable property, some of which was separate and some community and which was inventoried and appraised at $6,280. The decedent was survived by his widow and four minor children, three girls and one boy.

An administrator was appointed and on his application the community real estate was sold to pay debts of the community.

No account was ever filed by the administrator so far as appears from the record, and, in fact, no further proceedings were had under the administration after the sale to pay debts.

The widow was confirmed as natural tutrix and her brother, Jean Bte Bourgue, was appointed undertutor. The widow continued in possession of the separate real estate of her deceased husband, administering the same as well as the movable property in her capacity as natural tutrix.

In the early part of 1910 the tutrix contracted a second marriage, but before doing so she caused a family meeting to be held, on the advice of which she was retained as tutrix with her husband as cotutor.

The administration of the tutrix and her husband was not satisfactory to the paternal uncles of the minors and was detrimental to interest of the minors. It was permitted, however, to continue until the latter part of 1913, when one of the paternal uncles, Dr. J. A. Duplechain, brought suit to remove the tutrix and cotutor and undertutor, and, as cause for such destitution, alleged mismanagement of the property of the minors and the unnecessary sale of all of the movable property to the prejudice of the minors.

No defense was made to this application and in due course judgment was rendered removing the tutrix, cotutor, and undertutor from their trust.

The judgment appointed Dr. Duplechain as "curator ad hoc" to the minors until some one should be appointed tutor and he was authorized to take over the plantation of the minors and manage the same until a tutor could be appointed.

No dative tutor was appointed and Dr. Duplechain continued to administer and manage the plantation until the three girls married, when they, joined by their brother, who had been emancipated judicially, filed a suit against their uncle to compel him to file an account of his management.

An account was presented to the court covering the period from 1914 to 1924, inclu-

sive. The account was itemized and showed receipts in revenues belonging to the minors amounting to $4,769.10 and disbursements on behalf of the minors of $6,057.05, or an excess of disbursements over receipts of $1,287.95.

Oppositions were filed by the heirs to each and every item of the account both as to the debits and the credits, but after a trial was had on which considerable evidence was introduced the account as presented was approved by the court and the oppositions dismissed.

It is unnecessary to refer to the evidence in detail and we shall not attempt to do so. It is all sufficient to say that we have carefully read all of the evidence and fully approve the ruling of the trial judge.

It is true their was no legal justification for Dr. Duplechain to continue the management and administration of the minors' property and the collection and disbursement of their revenues without having been appointed and qualified as dative tutor, but no complaint is made on that score. He was asked to render a fair and faithful account of his management and he has done so. We find no suggestion or intimation in the evidence which would convict the doctor of failure to fully discharge his duty towards the minors.

On the contrary, we think the record bears out the statement that he collected all of the revenues that could have been collected for the minors and that he disbursed the same for the benefit of the minors and in their interest.

At the time, or just before the mother was removed as tutrix, the minors were placed in the care and custody of their maternal relatives, and it is argued that they (the minors) were old enough to earn their own board and in fact did perform services about the house and some of them by working in the field, sufficient to pay for their board, and that for this reason all items for board should be disallowed.

It appears that, when the mother of the minors married, two of the girls went to live with their paternal aunt; the other girl was taken in charge by Dr. Duplechain and the boy by another paternal uncle. They were all old enough to perform some work about the house and no doubt did so; but it could hardly be contended in the light of the evidence that such services as might have been rendered were sufficient to compensate for their board and clothing and to pay for their schooling.

The two girls who were placed in charge of their widowed aunt did not attend school, but that was because they did not want to and they were not forced to.

The amount paid the aunt was only $7.50 per month for each girl. The amount could only be regarded as a mere pittance. This sum, however, was actually paid by Dr. Duplechain and we see no reason why the amount so paid, not in excess of the revenues, should not be allowed Dr. Duplechain.

The other children were sent to school by Dr. Duplechain and their board and tuition paid by him; one of them (Rose) being sent to school in New Orleans.

It appears clear, we think, from the evidence, that the uncle of the minors advanced and paid out for each of the minors a sum considerably in excess of the interest of such minor in the revenues collected.

As the girls married their uncle gave them money and caused the small plantation to be surveyed and the girls put in possession of a portion of the same equal to the interest they would be entitled to therein on a partition.

The management of Dr. Duplechain during the entire period seems to have been to protect the interests of the minors and to pre-

serve the plantation inherited by them from their father and this he has done and the property turned over to them free of debt. He was a benefactor to the minors and not a spoliator of their property as it would appear to be charged.

█ The rents and revenues came into the hands of Dr. Duplechain at the end of each year during his administration and at no time was there a sufficient amount to reimburse him for what he had advanced out of his own money. There is, therefore, no cause to penalize him for failure to deposit the funds in a chartered bank nor for failure to file an annual account.

█ As we have already stated, the account shows an amount against each heir in excess of the revenues collected. The judgment merely approves the account and omits any reference to the balance shown to be due by the heirs to their uncle.

The law will not permit a tutor to claim against his ward any amount paid out in excess of the revenues of such ward in the absence of judicial authorization. Any claim made against the minors in excess of their revenues should be considered as rejected.

With this modification the judgment appealed from is affirmed, with costs taxed against opponents and appellants.