FOURNET, Justice.
 

 The plaintiff, a minor emancipated by marriage, sued defendant, the administrator of the succession of her late tutor, to recover the sum of $2,140, representing cash and movables received by her tutor in his capacity as such for her account and for which he never accounted, plus S per cent per annum interest from December 3, 1917, as a penalty, under the provisions of article 347 of the Revised Civil Code.
 

 This matter was before us on a previous occasion on an appeal taken by the plaintiff from a judgment of the lower court sustaining a plea of res adjudicata and the defendant’s answer thereto asking that his exceptions of no cause or right of action, which were overruled by the lower ■court, be considered.
 

 We held that the lower court properly overruled the exceptions of no cause and no right of action, but erroneously sus,tained the plea of res adjudicata, and we, therefore, remanded the case for further proceedings. 180 La. 314, 156 So. 364, 366.
 

 The defendant again filed exceptions of no cause and no right of action which were overruled; he then filed pleas of prescription of one, three, and four years, which were referred to the merits, and he finally filed an answer and the case was tried on the merits.
 

 The trial judge rendered judgment in favor of the defendant maintaining the exceptions of no cause and no right of action and the plea of prescription of one year, and plaintiff has appealed.
 

 The exceptions of no cause and no right of action in the instant case have no merit for we previously had this issue placed squarely before us for consideration, and we held that:
 

 “Under this state of facts, as disclosed by the allegations of plaintiff’s petition, our conclusion is that plaintiff has sufficiently .charged the administrator. with acts of maladministration for which he -is- individually liable, and.that the exception of-no
 
 *85
 
 cause or right of action was properly overruled.”
 

 The next question for our consideration, therefore, is whether this is an action arising under article 2315 of the Revised Civil Code, which provides that “every act whatever of man that causes damages to another, obliges him by whose fault it happened to repair it”; and prescribed in one year, under article 3536; or whether it is a cause of action subject to the prescription of ten years under the provisions of article 3544, which reads, “in general,
 
 all personal actions, except those before enumerated,
 
 are prescribed by ten years.” (Italics ours.)
 

 In considering the nature of plaintiff’s cause of action when this case was recent* ly before us on appeal, we said:
 

 “The minor’s claim was not listed in the final account. The administrator violated the order of the court to transfer the special mortgage of the minor in the sum of $2,140 to the proceeds of the sale, and the funds of the minor were misapplied by him to the payment of privileged debts and even ordinary claims, after the only security for the protection of these funds had been desiroyed by his procurement of the cancellation of the minor’s special mortgage on the property of her late tutor.”
 

 Article 2292 of the Revised Civil Code provides:
 

 “Certain obligations are contracted without any agreement, either on the part of the person bound, or of him in whose favor the obligation takes place. ■
 

 “Some are imposed by the sole authority of the laws, others from an act done by the party obliged, or in his favor.
 

 “The first are such engagements as result from
 
 tutorship,
 
 curatorship,
 
 neighborhood, common property, the acquisition of an inheritance, and
 
 other cases of a like nature.”
 
 (Italics ours.)
 

 In the case of Bills v. Pittman et al., 152 La. 907, 908, 94 So. 439, 440, the plaintiff sued the daughter of her curatrix for the recovery of certain movables and the value of those which could not be replaced. On a plea of prescription of one year this court had the following to say:
 

 “The suit is not founded on tort, but is for the recovery of specific property received in trust, and continued to be held in trust. The defendant, as heir and successor of her mother, has continued the possession held by her mother. That possession, being precarious, could never serve as a basis for the prescription acquirandi causa.
 
 In so far as the suit is for the value of those of the movables which, for one reason or another, cannot now be returned to plaintiff, it is not founded on tort, but upon the contractual obligation arising from the trust relation; and the very shortest prescription (if any) that could be applied to it would be that of 10 years.
 
 Gaude v. Gaude, 28 La.Ann. 181. See, also, the analogous case of School Board v. School Board, 36 La.Ann: 806.”
 

 But it is argued by counsel for defendant in this case that their client has never held in trust or in any fiduciary capacity any funds belonging to the plaintiff, and
 
 *87
 
 that the only funds were those belonging to the succession of James B. Courtney, Sr., plaintiffs late tutor.
 

 Article 1048 of the Revised Civil Code provides that the administrator of every succession shall give a bond for one-fourth over and above the amount'of the inventory, subject to certain deductions.
 

 Article 1049 of the Code provides that administrators shall have the same powers and be subject to the same duties and responsibilities as the
 
 curators
 
 of vacant estates.
 

 Article 1126 reads: “The
 
 curator
 
 of a vacant succession or of absent heirs, before he enters on the 'performance of his duties, must take an oath, before the judge who has appointed him,
 
 well and faithfully to discharge the duties as
 
 such, and
 
 give good and sufficient' security for the fidelity
 
 of his administration.” (Italics ours.)
 

 One of the duties of the defendant in this case, as administrator of the succession of James B. Courtney, Sr., and for which he gave bond was to render a true,' just, and perfect account of his actions, which necessarily included the listing of claims according to their rank and to pay them accordingly.
 

 The acts which gave rise to plaintiffs cause of action in the instant case are not careless or mere negligent ones, but it rather results from a breach of duty, “maladministration,” for having disregarded the law and the rights of plaintiff in not listing her as a privileged creditor according to the rank thereof, to be paid out of the proceeds of the real estate upon which she had a special mortgage to secure her claim.
 

 We think that such a cause of action clearly comes under the provisions of article 2292 as being one of those obligations “contracted without any agreement, either on the part of the person bound, or of him in whose favor the obligation takes place,” and is one of the personal actions referred to in Revised Civil Code, art. 3544, not before enumerated and subject to the ten-year prescription.
 

 Since the cause of action arose, Act No. 189 of 1934 has been enacted, sections 1 and 2 of which provide:
 

 “Section 1. Be it enacted by the Legislature of Louisiana,
 
 That no stiit or action shall be brought against any person who has served as
 
 curator of a vacant succession,
 
 administrator of a succession,
 
 testamentary executor or dative testamentary executor of a succession in the State of Louisiana or against the surety on such, person’s bond, by any heir, legatee or creditor of the succession or of the decedent or by' any other person, because of any mismanagement or fault on the part of said curator, administrator, testamentary executor or dative testamentary executor in the course of his administration or because of any act or thing which said curator, administrator, testamentary executor or dative testamentary executor may have done or failed to do in connection with the opening, administering or settlement of the said succession or the conduct of any probate or succession proceedings relating thereto, unless said action be brought with
 
 *89
 
 in a period of two years from the date of the judgment homologating the final account of said curator of a vacant succession, .administrator, testamentary executor or dative testamentary executor; provided, however, that this shall not apply to a demand or action for any funds or property embezzled or taken for his own use by such succession representative or to •any demand for any amount not paid out in accordance with the proposed payments shown on said final account.
 

 “Section 2. That in any case where more than two years has heretofore elapsed since the date of the judgment homologating the final account of any such succession representative without any action having been brought, of the kind which must be brought within the delay provided in the foregoing section, no such action shall be brought by any such heir, legatee or creditor or other person, unless it be brought within one year from the date this law becomes operative.”
 

 The act was approved by the Governor on July 13, 1934, and became operative on the 20th day after the 1934 Regular Session of the Legislature adjourned. Article 3, § 27, Constitution of 1921. The instant suit was filed on November 22, 1932, and citation was served upon the defendant on the 7th day of March, 1933, which was clearly within the prescriptive period provided for by the act. Therefore, assuming that the statute is applicable, the prescriptive period has not run.
 

 We shall now consider the special defenses raised by the defendant on the merits.
 

 I. The main defense on the merits appears to be the contention of defendant that any amount due plaintiff is offset (1) by the fact that she received, during her minority, maintenance, support, and education from her tutor in a sum equal to or exceeding the amount of her claim, and that the expenses thus incurred should be charged against her funds which were in the possession of her tutor, and judgment should be rendered against her in favor of the succession of her late tutor for the amount she received in excess thereof; and (2) that he (defendant), individually, is entitled to recover the sum of $990, with 5 per cent, interest from July 1, 1928, for boarding, lodging, and maintaining the plaintiff from the time of the death of her tutor, October 15, 1925, to the time she left his home, June, 1928, being thirty-three months at $30 per month.
 

 “The law will not permit a tutor to claim against his ward any amount paid out in excess of the revenues of such ward in the absence of judicial authorization. Any claim made against the minors in excess of their revenues should be considered as rejected.” In re Duplechain’s Estate, 168 La. 428, 122 So. 280, 281. See, also, Revised Civil Code, art. 350; In re Watson, 51 La.Ann. 1641, 26 So. 409; Mercier v. Canonge, 12 Rob. 385; Stewart v. Crump, 131 La. 463, 59 So. 903; Succession of Samuels, 21 La.Ann. 15; Sims v. Billington, 50 La.Ann. 968, 24 So. 637; Mahony v. Mahony, 41 La.Ann. 135, 5 So. 645.
 

 On this point the record shows that plaintiff’s tutor did not file an accounting of his tutorship, nor did he obtain author
 
 *91
 
 ization from the court to use any of his ward’s capital. The plaintiff now refuses to recognize the amount claimed for board and lodging as due, and we do not think from the evidence that it was the intention of the tutor to charge the same against the minor. We, therefore, cannot allow any charges against her capital. In re Duple-chain’s Estate, supra.
 

 II. Relative to defendant’s second defense, i. e., the claim against plaintiff for board and lodging at $30 per month for thirty-three months, the only evidence in the record in support thereof, aside from plaintiff’s testimony on cross-examination, is that of her two- aunts, Mrs. Earline C. Gregory and Mrs. Mildred Robinson, who both lived away from the home and testified that in their opinion it was worth $25 per month to board, lodge, and maintain the plaintiff. Plaintiff testified, under cross-examination, as follows:
 

 “Q. After your grandfather died, James Courtney and your grandmother were there at the house? A. Yes, sir.
 

 “Q.
 
 James Courtney was running the plantation and looking after the farming? A. Yes, sir.
 

 “Q. He was at the head of the farm business? A. Yes, sir.
 

 “Q. He paid the bills there at the house? A. Yes, sir.
 

 “Q. You stayed there with him from the time of your grandfather's death until June, 1928? A. Yes, sir.
 

 “Q. Did you ever pay him anything for board or did your father pay him- anything? A. No, sir, he wasn’t supposed to.
 
 My board was supposed to be free"
 
 (Italics ours.)
 

 The defendant does not contradict the plaintiff’s testimony, but she did not explain her reason for saying that “her board was supposed to be free,” that is, it is not explained whether that was her conclusion, or that she had work to perform about the house to offset the charges for her board, or exactly what the conditions were. We do find, on redirect examination, that she was asked the question, “Please state why you say your board .was supposed to be free,” and to that question counsel for defendant objected as being irrelevant and immaterial, which objection was sustained by the court.
 

 Under the provisions of article 1785 of the Revised Civil Code, if a minor has no tutor, he or she may obtain the necessaries for her support either under contract or quasi contract. But we are not satisfied with the proof in the record and, therefore, will have to remand the case in order that justice may be done to both parties on this question.
 

 “The tutor shall be bound to invest, in the name of the minor, the revenues which exceed the expenses of his ward, whenever they amount to five hundred dollars. In default thereof, he shall be bound to pay on such excess the rate of interest allowed by law.” Article 347, Rev.Civ.Code.
 

 On that subject it has become the settled jurisprudence, of this court that the word “revenues,” as used in the article, is synonymous with the word “funds,” and
 
 *93
 
 means all moneys belonging to the minor that come into the hands of the tutor in the course of his administration. Carter v. Ætna Casualty & Surety Co., 165 La. 478, 115 So. 662. See, also, In re Watson, 51 La.Ann. 1641, 26 So. 409; Monget v. Walker, 4 La.Ann. 214; Fuselier v. Babineau, 14 La.Ann. 764, and Fulton’s Heirs v. Curtis’ Heirs’ Adm’r, 3 La. 191, 194.
 

 Plaintiff’s tutor having failed to invest her funds as required by article 347 of the Code, it is mandatory that we allow her interest as therein provided.
 

 III. Another defense urged by the defendant is that plaintiff’s father, Leon Daniels, having been present with other members of the family when matters pertaining to the succession of James B. Courtney, Sr., were discussed and having failed to protest against the nonpayment of plaintiff’s claim, his action operates as a bar to any recovery by plaintiff in this suit. We eliminated that matter as an issue in our previous opinion in the following words: “The minor cannot be cited or notified except through his tutor. Even the surviving father or- mother cannot represent the minor unless he or she take the oath required by law. Code Prac. arts. 949, 950.”
 

 IV. This brings us to the defendant’s alternative plea that his liability should be limited to the difference in the amount of the sale price of the land covered by the minor’s special mortgage and the amount of mortgage existing on the land prior to and superior in rank to the mortgage of the minor.
 

 The entire property of the estate was sold for a lump sum, including the farm, live stock, and farming implements thereon for $10,000. The real estate was appraised at $10,000 and the movables at $3,015, making a total appraisement of $13,015. The pro rata part of the sale price of the property applicable to the real estate encumbered by plaintiff’s mortgage amounts to $7,844.88. The aggregate amount of principal and interest due J. H. Rives under two mortgages priming the plaintiff’s claim was $4,244.18, thus leaving a balance of $3,600.70.
 

 Counsel for defendant argue in their brief that “the special mortgage of the Plaintiff was not signed by the wife of the grandfather, Mrs. Mittie Courtney, and her homestead was not waived, so that the wife or widow’s claim for homestead was prior to the claim of the plaintiff,” and “in addition, the taxes paid by the Administrator amounted to $294.25, of which $245.20 was •clearly applicable to the real estate and a prior lien thereon, calculated on the same proposition as the bid.”
 

 It is the well-settled jurisprudence of this state that a homestead exemption, like the claim of a widow in necessitous circumstances under article 3252 of the Revised Civil Code, is a right which must be claimed and tested in proper proceedings, being personal to her. In the instant case we find that no such claim has been made by the widow, and neither is such a claim made in defendant’s answer.
 

 From an examination of the final account in the record by the administrator
 
 *95
 
 (defendant), it appears that he did pay the taxes amounting to $294.24, but we also find that there were ample funds on hand, after paying the privileged claims to pay the .taxes; moreover, defendant did not ■claim this amount in his answer.
 

 The record discloses that at the death ■of James B. Courtney there were in existence uncanceled mortgages affecting the real estate belonging to the deceased and ranking as follows:
 

 I. Two mortgages in favor of J. H. Rives, one for the sum of $3,000.00, dated April 8, 1912, with 8% per annum interest from April 1, 1912, and the other for $800.00, dated July 9, 1913, with 8% per annum interest from date. Total amount paid .account of said notes, as reflected by the account, (prior and superior to plaintiff's mortgage).. .$4,424.18
 

 .2. Special mortgage in favor of Anna Lou Daniel, plaintiff, for '$2,140.00, dated October 31, 1923, (no interest stipulated •thereon) ......................2,140.00
 

 .3. Mortgage in favor of Bastrop State Bank, for the sum of $2,645.00, dated March 10, 1925, with 8% per annum interest •from date. Amount paid account ■of said note as reflected by final .account, (junior and inferior to ■plaintiff’s mortgage)....;.......2,174.95
 

 Total amount of claims secured by mortgages.............. $8,659.13
 

 The special mortgage granted by plaintiff’s tutor in her favor, as it appears in the mortgage records at the time the junior mortgage creditor (Bastrop State Bank) recorded its mortgage, contained no provision for any interest, and necessarily we cannot allow interest on defendant’s claim to the prejudice of the junior mortgage creditor who had a right to depend upon the records at the time of the filing of his mortgage for the rank and amount of the claims superior thereto.
 

 The total amount secured by mortgages bearing on the real estate at the time of the final account was filed is $8,-659.13; whereas the prorata portion of the sale of the real estate was $7,844.88, thus lacking several hundred dollars of being sufficient to discharge all the secured claims. Under these circumstances, we are of the opinion that if the defendant had listed the plaintiff as a mortgage creditor, he would have had to limit plaintiff’s claim to the principal sum of the special mortgage, $2,140, for he could not have added successfully any interest, regardless of the amount that may have been due the minor by the ■ tutor. Therefore, the only amount plaintiff can claim against the defendant in this case is the amount she could have legally enforced at the time the defendant’s account was filed, that is, $2,-140, as a preferred claim, and $947.39 as an unsecured claim to share prorata with the other unsecured claims, with legal interest thereon from the date of the filing thereof.
 

 For the reasons assigned, the judgment of the lower court, maintaining the excep
 
 *97
 
 tions of no cause and no right of action, and the plea of prescription of one year, is annulled and set aside, and it is now ordered that the case be and it is hereby remanded to the lower court for the sole purpose of affording the defendant an opportunity to establish by competent evidence his alleged claim for board, lodging, and maintenance of plaintiff from October, 1925, to July, 1928, and such defenses and rebuttal evidence as plaintiff may care to introduce; and the district court is further ordered and directed to render judgment in favor of the plaintiff, Mrs. Annie Lou Hall, and against the defendant James Courtney for the sum of $2,206.08, with 5 per cent, interest per annum thereon from June 23, 1926, the date the account was homologated, until paid, subject to such credit as the trial judge may determine that the plaintiff owes the defendant for board, lodging, and maintenance; the defendant to pay all costs of court incurred up to this date, and all further costs of court to await the final outcome of the remaining issue.