HIGGINS, Justice.
 

 The plaintiff, upon reaching the age of majority, instituted this action against Dewey A. Angelloz, his dative tutor, and Arthur A. Angelloz, his former under tutor and the alleged discharged administrator of the estate of Arthur H. Angelloz, the deceased natural tutor, alleging that he had inherited considerable property and assets from the successions of his mother and father, respectively, and that the natural tutor and the dative tutor had each administered his estate during his minority and both of them had completely failed to, at any time, render an account; and that the¡ administrator of the estate of the deceased natural tutor also failed to render an account either to the plaintiff or to his dative tutor. He prayed that the dative tutor and the administrator of the estate of the deceased natural tutor be ordered to render a complete and de
 
 *991
 
 tailed accounting of all sums of money and property, real and personal, that they administered for his account, and that each or both of them be condemned to pay the amount that may be determined to be due him.
 

 Each of the defendants filed exceptions of misjoinder of parties defendant on the ground that there was not any common or community interests between the defendants, each being responsible for his own particular acts and not liable for the others, the claims against them being entirely different. They also filed exceptions of misjoinder of causes of action on the ground that they were two separate and distinct defendants acting in different capacities and, therefore, the causes of action were separate, distinct, and independent of each other.
 

 The judge ad hoc of the lower court sustained the exceptions and rejected the plaintiff’s demands, and he appealed.
 

 The plaintiff’s mother, who was also the mother of the two defendants, died on November 23, 1917, leaving certain community property and ten children, the plaintiff being the youngest. Her succession was opened on March 25, 1918, and the surviving husband and father of the children was appointed as natural tutor for the nine minors, Arthur A. Angelloz, the eldest son, being of the age of majority. He was appointed under tutor. The natural tutor acted in this capacity until his death on January 23, 1928. During all of the years in which he served as natural tutor, he did not render an accounting of his tutorship and none was demanded of him by the under tutor, Arthur A. Angelloz. Five of the children had reached the age of majority before their father’s death. 'On May 8, 1928, Arthur A. Angelloz, the brother and under tutor of the minors, was appointed administrator of the estate of his deceased father, the natural tutor, upon furnishing an administrator’s bond of the United States Fidelity and Guaranty Company in the sum of $60,000. On May 28, 1929, Dewey D. Angelloz, who had reached the age of majority, was appointed dative tutor of the remaining four minor children, after having furnished a bond of the United States Fidelity and Guaranty Company, according to law. The administrator did. not render an account to the plaintiff nor his dative tutor of the natural tutor’s administration of the minor’s estate. On June 11, 1929, a petition was filed to place the ten heirs in possession of their father’s estate and the administrator was discharged by judgment of court.
 

 In Gill et al. v. City of Lake Charles et al., 119 La. 17, 43 So. 897, 898, after reviewing the jurisprudence on the question of misjoinder of parties defendant, the court said: “The general result of the foregoing may be said to be that the avoidance of a multiplicity of suits is always, desirable, but that parties are not allowed to join unless they have a common interest as to the point at issue, and that even then the court may exercise a discretion.”
 

 See, also, Reardon v. Dickinson, 156 La. 556, 100 So. 715; Erskine Heirs v. Gardiner, 166 La. 1098, 118 So. 453; Lykes Bros. Ripley S. S. Co., Inc., v. Wiegand Marionneaux Lumber Co. et al., 185 La.
 
 *993
 
 1085, 171 So. 453; State ex rel. Woods v. Register of State Land Office, 189 La. 69, 179 So. 38; Keel v. Rodessa Oil & Land Co., 189 La. 732, 180 So. 502; and 47 C.J. 82.
 

 The learned counsel for the defendants insist there is no common interest between the defendants because the term of the natural tutorship began on March 25, 1918, and terminated on January 23, 1928, and involved only the administration of the mother’s undivided half interest in the community property for the nine minor children, whereas the dative tutor’s administration began on May 28, 1929 and continued until the four remaining minors each reached the age of majority and involved all of the community property of the mother and father inherited by these four minors.
 

 The Articles of the Civil Code and the jurisprudence on the subject are clear that the natural tutor is required to render an annual accounting to the minor or minors of his administration and it is the duty of the under tutor to compel the tutor to render such an account. The administrator of a deceased tutor’s estate is bound to render an account to the minor of the administration of his property and it is the duty of a succeeding dative tutor and the under tutor to see that such an accounting is rendered. Hall v. Courtney et al., 184 La. 80, 165 So. 458; Lusk v. Succession of Benton, 30 La.Ann. 686; Succession of Begue, 112 La. 1046, 36 So. 849; Porche v. Ledoux, 12 La.Ann. 350; Thibodeaux v. Thibodeaux et al., Tutors, 5 La.Ann. 597.
 

 It was the neglect of the duty of the respective tutors and the administrator and the failure of the under tutor to see that the accounts were rendered to the minor that placed him (the minor) in the position of being absolutely unable to determine what assets belonging to him were received by the administrator for the succession of the natural tutor and which of those assets were delivered by the administrator to-the dative tutor. In, short, because of the failure of the defendants to comply with the law by rendering proper and timely accounts of their respective administrations of the minor’s property, they have placed the plaintiff in the impossible position of determining what assets were administered by these respective parties defendant. It was within their power, by complying with the law, to leave a clear line of demarcation between their respective administrations but by neglecting and failing to meet the requirements of the law by filing the proper accounts, they have made it impossible for anyone except themselves to establish where one’s administration left off and the other’s began insofar as the administration of the minor’s property is concerned. The defendants certainly have a common interest as to the point at issue that each of them be required to render an account of the property he received and administered-If the plaintiff were compelled to file separate lawsuits based upon the dates when, the parties defendant, whose administrations are involved, were appointed and their offices terminated, it might well be that the defendant administrator would say that he delivered the property to the dative tutor and the defendant dative tutor would say
 
 *995
 
 that he had not received it. The inability of the plaintiff, in separate lawsuits, to prove by a preponderance of the evidence that the assets were delivered to one of the defendants and that the other one received them from him could easily result in plaintiff's loss because knowledge of what property or assets these defendants received is solely with them, since they made no record of the matter, as required by law.
 

 Counsel for the defendants in their brief say “one action can only tend to create confusion, chaos and embarrassment in their respective defenses. The defenses which each defendant-appellee has to urge are opposed and contradictory to each other.” This statement in itself shows that there is a common interest between the defendants to establish what property of the minor they received and administered, respectively. There is no reason why the disadvantages resulting from the failure and neglect of duty by defendants should be visited upon the plaintiff and thus place him in an impossible position to allege and prove his case by compelling him to file separate suits, especially when the defendants will suffer no hardship by being joined in one action so as to establish what property of the minor they received and administered. The exception of misjoinder of parties defendant is without merit.
 

 Articles 147, 148 and 149 of the Code of Practice read, respectively, as follows:
 

 147.“A demand means a civil action brought before a court of justice to obtain a thing to which one thinks himself'entitled.” •
 

 148. “Separate actions may be cumulated in the same demand, except -in the cases hereafter expressed; this is termed cumulation of action.”
 

 149. “The plaintiff is not allowed to cumulate several demands in the same action, when one of them is contrary to or precludes another.
 

 “As when one has bought a thing in the name of another, and with his funds, without his authorization, the person for whom the purchase has been made, can not demand, by the same action, both the thing bought in his name and the money employed for paying the price.
 

 “Nor can a vendor demand, at the same time, the rescission of the sale he had made and the price for which it was made; he must decide for one or the other of the tWo causes of action, as the one precludes the other.”
 

 In the instant case there is one tutorship proceeding and the claims against the respective parties defendant charged with the responsibility to the minor of having the accounting properly made arise from their failure to do so. Until the parties defendant establish what assets belonging to the minor .they received and administered, it is impossible to know the extent of their liability for failing to account. Therefore, the demands are not contrary to and do not preclude each other. Any decree or judgment rendered in this joint action or any decree or judgment rendered in separate actions against these defendants growing out of this matter would- necessarily affect either one of them adversely or favorably. It is our conclusion that the
 
 *997
 
 exception of misjoinder of causes of action is not well founded.
 

 For the reasons assigned, it is ordered, adjudged and decreed that the judgment of the district court is annulled and set aside, the exceptions of misjoinder of parties defendant and misjoinder of causes of action are overruled and the case is remanded to the district court for further proceedings consistent with the views herein expressed; the appellees to pay the costs of this court and all other costs to await the final disposition of the litigation.
 

 O’NIELL, C. J., absent.