CARTER, Judge.
This is an appeal from a trial court judgment refusing to remove a provisional curator.
FACTS
On December 7, 1987, Barbara Y. Stafford, Francis O. Mino, and Phyllis J. Long filed a petition for the interdiction of their mother, Bertha Patecek Von Schneidau. In their petition for interdiction, petitioners requested that Long be appointed as curator of the interdict’s person and property and that Stafford be appointed as undercu-rator. Petitioners subsequently filed a motion to appoint a provisional curator as set forth in their original petition for interdiction.
On April 11, 1988, the trial court determined that Bertha Patecek Von. Schneidau was incapable of handling her affairs' and should be interdicted.[1] On April 18, 1988, the judgment of interdiction was signed.[2] The interdict’s brother, Frank J. Patecek, then filed a motion and order to be appointed as provisional curator pursuant to a power of attorney previously executed by the interdict on October 22, 1987. The trial judge granted Patecek’s ex parte motion on April 18, 1988, appointing Patecek as provisional curator of the interdict’s person and property and appointing Long as provisional undercurator.
On June 28, 1988, petitioners filed a petition to appoint a permanent curator and a rule to remove Patecek as provisional curator. After a hearing on the rule to remove the provisional curator, the trial judge determined that petitioners had failed to establish that removal of the provisional curator was in the best interest of the interdict.[3] Accordingly, the trial judge rendered judgment in favor of Patecek, dismissing petitioners’ rule to remove Patecek as provisional curator.
From this adverse judgment, petitioners appeal, assigning the following specifications of error:
1. The Court erred in not removing the provisional curator as being in the best interests of the interdict and appointing Phyllis Long, the provisional un-dercurator in his stead.
2. The Court erred in refusing to allow John Paul Pratt, M.D. to testify based on the patient-physician privilege raised by the provisional curator on behalf of the interdict.
3. The Court erred in not removing Frank J. Patecek as provisional curator of the interdict for his mismanagement of her estate and for conflicts of interest between the interdict and her curator.
PRIVILEGE
Petitioners contend that the trial court erred in excluding the testimony and/or report of Dr. John Paul Pratt.
In the petition for interdiction, petitioners requested, and the court ordered, that Albert W. DeVillier, M.D. and Brian Murphy, Ph.D. produce reports as to the inter- *944 diet’s condition and that Ludwig Heintz, the coroner, be appointed as an expert to examine the interdict. Thereafter, in their amended petition, petitioners requested, and the court ordered, that Dr. DeViliier, a psychiatrist, and Dr. Murphy, a psychologist, be appointed to examine the interdict. Petitioners then filed a motion and order to substitute the court appointed psychiatrist. Petitioners requested that Dr. John Paul Pratt be substituted as the court appointed psychiatrist. The request was not opposed, and the trial judge ordered that Dr. Pratt be appointed as an expert in Dr. DeVillier’s place.
In response to petitioners’ subsequent petition to appoint a permanent curator and rule to remove Patecek as provisional curator, Patecek filed a motion in limine, seeking to exclude any testimony, findings, or reports by Dr. Pratt on the grounds that they were privileged. Patecek also filed a motion to strike, reiterating the objections previously set forth in the motion in li-mine.[4] Thereafter, on February 15, 1989, Patecek filed an ex parte motion invoking the physician-patient privilege pursuant to LSA-R.S. 13:3734, which the trial judge granted, recognizing the physician-patient privilege and refusing to permit Dr. Pratt to testify. Thereafter, at the hearing on the rule to remove the provisional curator, the trial judge granted the motion in limine and motion to strike, excluding the introduction into evidence of any report by Dr. Pratt.
The legislature has statutorily provided a qualified privilege for communications between a patient and his health care provider in civil proceedings. LSA-R.S. 13:3734. Generally, in civil cases, a patient or his authorized representative has a privilege to refuse to disclose and to prevent a health care provider from disclosing any communication relating to any fact, statement, or opinion which was necessary to enable that health care provider to diagnose, treat, prescribe, or act for the patient. LSA-R.S. 13:3734 B. The privilege is qualified in that it is not applicable in all civil proceedings. LSA-R.S. 13:3734 C enumerates the types of civil cases in which the privilege is waived.[5] Carney v. Carney, 525 So.2d 357 *945 (La.App. 1st Cir.1988), writ denied, 530 So.2d 88 (La.1988).
Dr. Pratt qualifies as a “health care provider” under LSA-R.S. 13:3734 A(l), and his evaluation of the interdict is a “communication” within the meaning of LSA-R.S. 13:3734 A(5). As curator for the interdict, Patecek is the “representative” entitled to invoke the privilege. LSA-R.S. 13:3734 A(4). The issue remaining, however, is whether the privilege has been waived or is otherwise inapplicable.
Patecek urges that the physician-patient privilege applies to all communications between the interdict and Dr. Pratt. In support of this position, Patecek relies on Interdiction of Haggerty, 485 So.2d 67 (La.App. 4th Cir.1985), appeal after vacation and remand, 519 So.2d 868 (La.App. 4th Cir.1988). Patecek correctly points out that in Haggerty the court stated:
R.S. 13:3734 provides that in civil cases a patient has a privilege to prevent a health care provider from disclosing any communication relating to any fact, statement or opinion necessary to enable the provider to diagnose or treat the patient. The statute specifically provides for exceptions, but interdiction proceedings are not among these.
[485 So.2d at 88],
However, Patecek’s reliance on this case is clearly misplaced.'
In Interdiction of Haggerty, supra, plaintiff subpoenaed two physicians, who had treated defendant, her medical records, and two nursing home personnel. The trial court refused to permit the introduction of any of the medical evidence because of defendant’s privilege. However, Interdiction of Haggerty, supra, did not involve a court-appointed medical expert.[6]
LSA-R.S. 15:476 sets forth an exception to the privileged communications between a physician and patient as follows:
No physician is permitted, whether during or after the termination of his employment as such, unless with his patient’s express consent, to disclose any communication made to him as such physician by or on behalf of his patient, or the result of any investigation made into the patient’s physical or mental condition, or any opinion based upon such investigation, or any information that he may have gotten by reason of his being such physician; provided, that the provisions of this article shall not apply to any physician, who, under the appointment of the court, and not by a selection of the patient, has made investigation into the patient’s physical or mental condition; provided, further, that any physician may be cross-examined upon the correctness of any certificate issued by him. (Emphasis added).
As noted in State v. Felde, 422 So.2d 370 (La.1982), cert. denied, 461 U.S. 918, 103 S.Ct. 1903, 77 L.Ed.2d 290 (1983), the physician-patient privilege does not apply to a physician who is court-appointed.
In the instant case, Patecek presented the testimony of Dr. Susan Andrews, a clinical psychologist who evaluated the interdict on several occasions. Dr. Andrews opined that the interdict did not trust Long, but did trust Patecek. When Long attempted to present the testimony of the court-appointed physician, Dr. Pratt, to refute the testimony of Dr. Andrews, it was met with objection. The trial court then refused to permit Dr. Pratt to testify.
Clearly, this constituted error. The physician-patient privilege as set forth in LSA-R.S. 13:3734 does not apply to court-appointed experts. Because the testimony of Dr. Pratt is critical to an understanding of the interdict’s relationship with Long and Patecek, which is necessary to a determination of the best interest of the interdict and whether the provisional curator should be removed, the matter must be remanded for the introduction of such evidence and a reevaluation of the trial court decision in light of such medical evidence.
*946 REMOVAL OF PROVISIONAL CURATOR
It is recognized that, absent specific coda! provisions to the contrary, the relationship between an interdict and his curator is the same as that between a minor and his tutor. LSA-C.C.P. art. 4554; Interdiction of Hines, 458 So.2d 555 (La.App. 3rd Cir.1984); Redmond v. Davis, 351 So.2d 1256 (La.App. 1st Cir.1977), writ denied, 353 So.2d 1341 (La.1978). LSA-C.C.P. art. 4234, as amended by Acts 1976, No. 429, § 3, provides in pertinent part, as follows:
The court may remove any tutor who is or has become disqualified; is a nonresident who has not appointed, or has left the state permanently without appointing, an agent to represent him as required by Article 4273; has become incapable of discharging the duties of his office; has mismanaged the minor’s property; has failed to perform any duty imposed by law or by order of court; or if such removal would be in the best interests of the minor. (Emphasis added).
The last phrase, emphasized above, was added by the 1976 amendment.
In Redmond v. Davis, supra, this court explained the principle of supplementing the grounds for removal as follows:
In adopting the amendment, we think the legislature intended that in addition to the specific grounds for removal listed in the article the court should also be vested with a certain degree of discretion and that the interests of the interdict should be paramount.
[351 So.2d at 1257]
See also Interdiction of Hines, supra. The trial judge has wide discretion to act in the best interest of the interdict in appointing a curator. Interdiction of Thomas, 535 So.2d 1315 (La.App. 5th Cir.1988); Interdiction of Hines, supra; Matter of Magee, 366 So.2d 204 (La.App. 2nd Cir.1978).
Petitioners’ request for Patecek’s removal as provisional curator is based upon alleged conflicts of interest between the interdict and Pateeek.
The record reveals a longtime business association between Pateeek and the interdict, which Pateeek acknowledged as being run very loosely. Michael Byrd, the CPA who handled the association between Pate-cek and the interdict, described the operation as having “very loose internal control” and basically one that “operate[d] out of the checkbook.”
Prior to the initiation of the interdiction proceeding, the interdict and Pateeek co-owned, in equal proportions, three parcels of property, and, within approximately a week of the filing of the petition for interdiction, the interdict and Pateeek executed an act of exchange, exchanging the three parcels of property. In the act of exchange, Pateeek obtained parcel I and III and 20% of parcel II. In exchange therefor, the interdict received the remaining 80% of parcel II. The proces verbal of the inventory of the interdict’s property prepared by court-appointed appraisers revealed that parcels I and III, which were obtained by Pateeek in the act of exchange, were valued at $50,000.00 and $105,000.00, respectively.[7] Parcel II, the tract of which the interdict obtained 80%, was valued at $40,000.00. According to Pateeek, Parcel II had rental income of $900.00 a month, and one of the parcels in which he acquired full ownership had monthly rental income of only $200.00. Further, Pateeek acknowledged that he and the interdict were involved in litigation regarding damage to the house located on Parcel II.
Additionally, Pateeek and his daughter, Paula Pateeek Johnson, owner of and sales agent for the Pateeek Realty Group, respectively, had real estate listings on the interdict’s properties, including a valuable tract of land along Highway 190. The record also revealed that Pateeek earned *947 real estate commissions on various property transactions, including a lease to • an off-tract betting establishment.
Furthermore, the record is replete with checks written on behalf of the interdict to Patecek and Paula Johnson for room and board and personal services, such as running errands and providing transportation.[8] Finally, Patecek initially had outstanding indebtedness to the interdict, which has subsequently been repaid.
After reviewing this evidence, while there is no evidence of mismanagement per se, we are concerned over the propriety of Patecek’s managing the interdict’s property in light of the numerous dealings between the two. LSA-C.C.P. art. 4069 provides for a separate curator of property, upon a showing of good cause. Interdiction of Thomas, supra. Further, the appointment may be made upon the court’s own motion. Interdiction of Thomas, supra; Matter of Magee, supra.
However, we note that a similar conflict of interest exists between the interdict and petitioners. The large, .valuable tract of property located along Highway 190 is owned in indivisión by the interdict and petitioners; the interdict owns 55%, and petitioners own 45%. Further, two of the petitioners are signatories on accounts into which approximately $40,000.00 of the interdict’s assets have been deposited. Petitioners have refused to permit the provisional curator access to this account. Also, the record reveals that, prior to the interdiction, Long resided with and cared for her mother and was compensated for such services.
Considering all of the foregoing, we find that good cause exists for a separate curator of the property to be appointed.
CONCLUSION
For the above reasons, the portion of the trial court judgment refusing to remove Patecek as provisional curator of the inter-diet’s person is reversed. The matter is remanded to the trial court for the admission of the testimony of Dr. Pratt, the court-appointed psychiatrist, a redetermination of the best interest of the interdict, and the appointment of a provisional curator of the interdict’s person in light of this testimony. The portion of the trial court judgment appointing Patecek as provisional curator of the interdict’s property is reversed, and the matter is remanded to the trial court to appoint a disinterested third party, such as a bank or similar concern, as curator of the interdict’s property. Costs to await a final resolution of the matter.
REVERSED AND REMANDED.

. Although in his written reasons for judgment, the trial judge appointed Long as provisional curator, the judgment of interdiction failed to appoint Long as curator.

. The judgment of interdiction was subsequently affirmed by this court, in an unpublished opinion, on September 28, 1989, under docket number 88 CA 1472, 551 So.2d 75, writ denied, 556 So.2d 1278 (La., 1990), decided under docket number 89 CA 2808 on January 26, 1990.

.In his reasons for judgment, the trial judge expressly refused to address the issue of appointment of a permanent curator in that, at the time of the hearing, the appeal of the interdiction had not yet been determined by this court. See footnote 1.

. The motion in limine and motion to strike also sought to exclude other evidence, none of which is pertinent to the inquiry herein.

. LSA-R.S. 13:3734 C provides as follows:
C. There shall be no privilege for any communication under this Section in the following circumstances to the extent indicated:
(1) Either before or after probate, upon the contest of any will executed, or claimed to have been executed, by such patient, or after the death of such patient, in any action involving the validity of any instrument executed, or claimed to have been executed by him, conveying or transferring any immovable or movable property, any health care provider who has attended said patient may disclose any communication regarding the patient which was necessary to enable him to diagnose, treat, prescribe or to act for such deceased.
(2) After the death of the patient, the executor of his will, or the administrator of his estate, or the surviving spouse of the deceased, or if there be no surviving spouse, the children of the deceased personally, or if minors, by their representative, may give such consent, in any action or proceeding brought to recover damages on account of the death of the patient, to permit any health care provider who may have attended said patient at any time to disclose any communication regarding said patient which was necessary to enable him to diagnose, treat, prescribe or act for such deceased.
(3) If any person brings an action to recover damages, in tort or for worker’s compensation under federal or state laws, for personal injuries, such action shall be deemed to constitute a consent by the person bringing such action that any health care provider who has attended such person at any time may disclose any communication which was necessary to enable him to diagnose, treat, prescribe, or act for said patient.
(4) The bringing of an action to recover for the death of a patient by the executor of his will, or by the administrator of his estate, or by the surviving spouse, or, if there be no surviving spouse, by the children personally, or, if minors, by their representative, shall constitute a consent by such executor, administrator, surviving spouse, or children or representative to the disclosure of any communication by any health care provider who may have at any time attended said deceased.
(5) If any health care provider reasonably believes in good faith that any legal proceeding enumerated in Paragraphs (3) or (4) under this Subsection has or may be instituted for or on behalf of said patient, such health care provider may disclose any communication acquired by him which was necessary to enable him to diagnose, treat, prescribe, or act for said patient.

. Subsequent to the trial court’s refusal to admit the medical evidence at the interdiction proceedings in Interdiction of Haggerty, 485 So.2d 67 (La.App. 4th Cir.1985), appeal after vacation and remand, 519 So.2d 868 (La.App. 4th Cir. 1988), the plaintiff requested that the court appoint a medical expert.

. The proces verbal, with attached appraisals, showed that Parcel I was appraised at $50,-000.00, but that, after making adjustments for the value of the undivided interest rather than the fee value, the interdict’s undivided 50% interest was valued at $22,500.00. The interdict's undivided 50% interest in Parcel II, after a similar adjustment, was $18,000.00, and the interdict’s undivided 50% interest in Parcel III was $50,000.00.

. Prior to the interdiction, the interdict resided in her own home and was cared for by Long. Shortly after the interdiction proceeding commenced, Patecek removed the interdict from her home and placed her in a room in his home. The interdict has resided in the Patecek home since that time.