680 So.2d 1280 (1996)
Susan Peters RACHAL, Plaintiff-Appellant,
v.
Max PETERS and Welcare International, Inc., Defendants-Appellees.
No. 28,655-CA.
Court of Appeal of Louisiana, Second Circuit.
September 25, 1996.
*1281 Sedric E. Banks, Monroe, for Plaintiff-Appellant.
Hudson, Potts & Bernstein by Gordon L. James, Monroe, for Max Peters.
Pugh, Boudreaux & Shelton by James R. Shelton, Lafayette, for Welcare International, Inc.
Before MARVIN, BROWN and PRICE, JJ.
MARVIN, Chief Judge.
In this La.C.C. art. 2315.1 survival action for damages to her paternal grandmother, a deceased nursing home resident, brought by the granddaughter plaintiff against her paternal uncle and the nursing home operator, the granddaughter appeals a judgment dismissing her action on exceptions of no cause of action and no right of action filed by each of the defendants.
Defendant Max Peters, the decedent's son and plaintiff's uncle, is alleged to have placed his widowed mother in the nursing home against her wishes in June 1993 and failed to protect her from physical and mental harm by nursing home personnel before her death some seven months later. The nursing home operator, Welcare International, Inc., is alleged to have "acted in concert with Max Peters so as to wrongfully admit and retain [the grandmother] against her will and desire," causing physical and emotional injuries to the grandmother.
Plaintiff's paternal grandparents, Mr. & Mrs. Louis Peters, Sr., had two sons, Max Peters, the uncle-defendant, and Louis Peters, Jr., plaintiff's father, who predeceased his parents in 1983. Louis Sr. died suddenly in June 1993. His widow, who was placed in a Ferriday, La., nursing home and interdicted by her son Max shortly after her husband's death, died in January 1994.
The issue is whether plaintiff, Mrs. Susan Peters Rachal, is a "surviving child" of the decedent who is eligible under the code to bring a survival action for the alleged injuries. No action was brought during her lifetime by the grandmother against either defendant. No action has been brought for wrongful death of the grandmother.
We affirm the sustaining of the peremptory exceptions against the survival action, but reverse the dismissal of the action to allow plaintiff an opportunity to amend. La.C.C.P. art. 934. We remand for that purpose.

PREFACE
In November 1993, a few months after admitting his mother to the Heritage Manor Nursing Home in Ferriday, Concordia Parish, Max Peters was appointed as her curator *1282 in interdiction proceedings brought by Peters in Tensas Parish, where Mrs. Peters was apparently domiciled. According to this record, the plaintiff, Mrs. Rachal, who resides in Ouachita Parish, did not oppose her uncle's appointment as curator. After her grandmother's death, Mrs. Rachal brought this action in Richland Parish, where Max Peters is allegedly domiciled.

ALLEGATIONS OF PETITION
We summarize the allegations of Mrs. Rachal's petition, which are taken as true for purposes of these exceptions: Both Mrs. Peters and her husband, Louis Peters, Sr., feared being placed in a nursing home and had amassed ample savings to cover the cost of being cared for at home in their later years, should either or both of them become care-dependent. When Mr. Peters died suddenly on June 23, 1993, Mrs. Peters was physically, mentally and financially capable of continuing to live at home. Her son, Max Peters, being "motivated by undue concern and efforts to further his personal convenience and/or conserve his inheritance to the prejudice and personal loss, damage and injury to his mother," admitted his mother to the nursing home against her will on or about June 26, 1993, only a few days after her husband's death, and without having obtained medical documentation of her need for nursing home care. The corporate operator of the nursing home, Welcare International, Inc., "acted in concert with Max Peters so as to wrongfully admit and retain [Mrs.] Peters in [the] nursing home against her will and desire."
The petition further alleges that while residing in the nursing home, Mrs. Peters was "wrongfully restrained ... and subjected to degradation, humiliation, ... loss of personal dignity and self-esteem, [and] extreme emotional and mental anguish"; that nursing home personnel "failed to attain and/or maintain the highest practical physical, mental and/or psychosocial well-being" of Mrs. Peters; failed "to reasonably meet [her] individual needs"; failed to provide "a reasonably safe environment conducive to [her] known mental and physical conditions"; and failed "to keep and maintain the proper documentation and records required by law relating to the care and well-being" of Mrs. Peters.
Max Peters, acting individually or in concert with Welcare, allegedly failed to meet his mother's personal needs relating to grooming, eye care, dental care and psychosocial care, and wrongfully denied her "such basic human liberties as the pursuit of the close family support and loving bonds which she had enjoyed throughout her life," even after he became legally obligated, as her curator, "to act for and on behalf of [Mrs.] Peters so as to reasonably [meet her] personal needs ... within the available means.... Max Peters negligently and/or wilfully breached such obligations[.]"
Finally, the petition alleges that Mrs. Peters "never wanted to be resuscitated while suffering a last illness"; that Max Peters knew, and "made certain" that nursing home personnel knew, his mother was not to be resuscitated during her last illness; that "all proper documents were executed in the ... nursing home so that the last wish and desire of [Mrs.] Peters would be honored"; and that in spite of these stated wishes, nursing home employees "wrongfully began efforts to resuscitate [Mrs.] Peters during her last illness, thus causing [her] suffering to continue another two days until her death[.]"

SURVIVAL ACTION BENEFICIARIES
The exceptions were sustained on the authority of La.C.C. art. 2315.1, which establishes these exclusive categories of beneficiaries who may bring a survival action for injuries suffered by another before his or her death:
"(1) The surviving spouse and child or children of the deceased, or either the spouse or the child or children;
(2) The surviving father and mother of the deceased, or either of them if he left no spouse or child surviving; and
(3) The surviving brothers and sisters of the deceased, or any of them, if he left no spouse, child or parent surviving." (Our emphasis.)
The same classes of beneficiaries may also bring a wrongful death action for the damages they sustain as a result of their relative's *1283 death. Art. 2315.2. Notwithstanding that Mrs. Rachal's petition asserts only the survival action, we shall discuss cases involving both actions because the codal beneficiaries in each action are essentially the same.
The provisions of Arts. 2315.1 and 2315.2, which were formerly contained in Art. 2315, have been consistently interpreted as excluding "grandchildren" from the first class of beneficiaries, even where, as here, the grandchild may be classified as an heir in the grandparent's succession proceeding through representation of a parent who predeceased the grandparent. See Hunt v. New Orleans Ry. & Light Co., 140 La. 524, 73 So. 667 (1916); Chatman v. Martin, 245 So.2d 423 (La.App. 2d Cir.1971); and Viau v. Batiste, 332 So.2d 512 (La.App. 4th Cir.1976), writ denied. As we appreciate the law, it is only when the codal beneficiary who survives the decedent later dies that the beneficiary's heir "inherits" the beneficiary's right to bring either or both the wrongful death and survival actions. Arts. 2315.1(C); 2315.2(C). See, for example, Haas v. Baton Rouge General Hospital, 364 So.2d 944 (La.1978) and Blanchard v. Tinsman, 445 So.2d 149 (La.App. 3d Cir.1984), writ denied.
The legislature has recognized only one exception to the preferential ranking scheme of Arts. 2315.1 and 2315.2: The highest-ranked beneficiary may not recover wrongful death or survival damages if that beneficiary

has been convicted of a crime involving the intentional killing or attempted killing of the deceased, or, if not convicted, who has been judicially determined to have participated in the intentional, unjustified killing or attempted killing of the deceased[.] ... In such case, ... the other survivors enumerated in [Arts.] 2315.1(A) and 2315.2(A), in order of preference stated, may bring a survival action... or an action ... for the wrongful death of the deceased ... against such surviving spouse, parent, or child[.]
Art. 2315.5, enacted by Acts 1987, No. 690. Our emphasis and brackets.
Before the Art. 2315.5 exception was codified, the fact that the codal beneficiary intentionally killed the decedent did not, of itself, bar the beneficiary's recovery, notwithstanding strong arguments for judicial creation of such an exception or equitable remedy. Even in circumstances of spousal murder/suicide, the right of the parents or siblings of the murder victim to assert wrongful death and survival claims against the killer's estate or liability insurer hinged on the fortuity of which spouse died first. Only if the murder victim happened to die after the killer, leaving no surviving spouse under the codal scheme, could the murder victim's other codal beneficiaries assert the wrongful death and survival claims. See and compare Gonzales v. Succession of Medica, 141 So.2d 887 (La.App. 2d Cir.1962) and von Dameck v. St. Paul Fire & Marine Ins. Co., 361 So.2d 283 (La.App. 1st Cir.1978), writ denied.
The plaintiff-granddaughter here, Mrs. Rachal, has not alleged facts that would bring her claim within the Art. 2315.5 exception. She concedes that under the existing law, her uncle, Max Peters, appears to have the exclusive right to bring the survival action on behalf of Mrs. Peters. Mrs. Rachal argues, however, that under the unique circumstances of this case, in which the sole Art. 2315.1 beneficiary is the same person who is alleged to have caused or contributed to the injuries giving rise to the survival action, and to have breached his fiduciary duty as his mother's curator to act in her best interest before her death, it would be patently inequitable to bar her or another family member from bringing the action.
Invoking La.C.C. art. 4, by which the courts are "bound to proceed according to equity[,] ... justice, reason, and prevailing usages ... [w]hen no rule for a particular situation can be derived from legislation," Mrs. Rachal asks that we "fashion an equitable remedy under these facts to secure justice." Otherwise, she argues, her uncle, as the only surviving child of Mrs. Peters, will succeed in "committing the perfect crime" against his mother with impunity. As in the case of a homicide committed by one spouse of the other before Art. 2315.5, we leave the creation of the equitable remedy to the legislature.

DISCUSSION
At the outset, we note that the legislature's classification and ranking of wrongful death *1284 and survival action beneficiaries has traditionally been given a narrow and literal construction by the courts, even in the face of strong equitable arguments for extending or enlarging the codal scheme. See, for example, Roche v. Big Moose Oil Field Truck Service, 381 So.2d 396 (La.1980); Laborde v. Eagle Trucking Co., 409 So.2d 1266 (La.App. 2d Cir.1982), writ denied; Nelson v. Burkeen Construction Co., 605 So.2d 681 (La.App. 2d Cir.1992); and Craig v. Scandia, Inc., 25,707 (La.App.2d Cir. 3/30/94), 634 So.2d 944, writ denied.
In some instances, the harsh and arguably "absurd" results which the courts felt constrained to reach in a particular case were later remedied by the legislature. See, for example, Art. 2315.5, partially quoted and discussed supra, which now squarely bars recovery by the decedent's surviving spouse in the spousal murder/suicide scenario of Gonzales v. Succession of Medica, cited supra. See also Art. 2315.1(B), enacted in 1986 and amended in 1987 to allow the survival action to be brought by the decedent's succession representative if the decedent is not survived by a spouse, child, parent or sibling. Before Art. 2315.1(B), the absence of relatives in any beneficiary class caused the survival action to abate, creating "a class of tort victims who, from the tort feasor's standpoint, are better dead than badly wounded." Henry v. State, Through Dept. of Health and Human Resources, 435 So.2d 565, 568 (La. App. 3d Cir.1983), writ denied.

OTHER APPLICABLE LEGISLATION
In contrast to the strict and literal construction of the codal scheme defining when and by whom the survival action may be brought, the legislature and the courts have taken a broader view of who may do what to protect the interests of an interdicted person. See generally La.C.C. arts. 389-426; La. C.C.P. arts. 4541-4557; La.R.S. 9:1021-1025.
The Civil Code provides for a limited interdiction, in which the rights of the interdict are infringed "in the least restrictive manner consistent with his incapacities." Art. 389.1. The Code further charges the undercurator with the duty "to act for the interdicted person, whenever the interest of the interdicted person is in opposition to the interest of the curator." Art. 407. This record does not show who served as undercurator for Mrs. Peters.
When the person sought to be interdicted is domiciled in this state, as Mrs. Peters was, the interdiction proceeding must be brought in the parish of her domicile. La.C.C.P. art. 4541. Any "interested person" may apply to be appointed as curator, and the court "shall appoint the applicant best qualified, personally, and by training and experience, to serve as curator." C.C.P. arts. 4549, 4550. Opposition to a particular applicant may be filed, and must be tried in a summary manner. Arts. 4554, 4067. The curator must furnish security for the faithful performance of his duties and must file accounts of his administration, annual and final, which may be opposed by the undercurator or a successor curator, and which must be approved by the court. Arts. 4554, 4131-4133, 4136, 4391-4398.
The curator's duties include caring for the person of the interdict and administering the interdict's property. Arts. 4554, 4261-4275. For good cause, the court may appoint a separate curator for the person and the property. Arts. 4550, 4069. The interdict has procedural capacity to sue in his or her own name to revoke the interdiction, in contradictory proceedings with the curator. Art. 4557.

Removal of Curator from Office
Any interested party may seek to have the curator removed from office if the curator has mismanaged the interdict's property, has failed to perform any duty imposed by law or by court order, "or if such removal would be in the best interests of the [interdict]." C.C.P. arts. 4554, 4234. The trial court has broad discretion in determining whether removal of a curator is in the interdict's best interest. See generally In the Matter of Magee, 366 So.2d 204 (La.App. 2d Cir.1978); In re Redmond, 351 So.2d 1256 (La.App. 1st Cir.1977), writ denied; and Interdiction of Von Schneidau, 560 So.2d 942 (La.App. 1st Cir.1990), writ denied.
By Acts 1993, No. 639, the legislature enacted La.R.S. 9:1025, which lists additional *1285 grounds for which a curator may be removed. The statute, which was in effect when Mrs. Peters was interdicted, allows "[a]ny ... relative of an interdict" to petition for the removal of a curator "upon a clear showing that neither the curator nor the undercurator are adequately performing their court-appointed duties." § 1025(A). Among the factors that may be considered by the court under § 1025(B) are the following specific types of curator misconduct which have been alleged or suggested by the petition here:
(1) Whether the curator has, with gross negligence, misapplied, embezzled, or removed from the state, or is about to misapply, embezzle, or remove from the state all or any part of the interdict's property committed to the curator's care.
* * * * * *
(4) Proof of gross misconduct, or mismanagement in the performance of duties.
* * * * * *
(6) Abuse of the interdict, or failure to educate the interdict or provide the interdict with as much independence as the means of the interdict and the conditions of his estate permit.
As mentioned, there is no indication in this record that Mrs. Rachal opposed her uncle's appointment as his mother's curator or sought to have him removed as curator before her death. Neither is it suggested that Mrs. Peters attempted to have the interdiction revoked.

Protection of Nursing Home Residents
Private nursing homes have been regulated by the state since 1958. See La.R.S. 40:2009.1 et seq. In 1978, some 15 years before Mrs. Peters' confinement to a nursing home, the legislature established formal complaint procedures available to "[a]ny person having knowledge of the alleged abuse or neglect of a patient of a nursing home, ... or who ... has knowledge that a nursing home patient is not receiving care and treatment to which he is entitled under state or federal laws[.]" La.R.S. 40:2009.13. Complaints are investigated by the Department of Health and Human Resources and, if made in good faith, render the complainant immune from civil liability that may be asserted as a result of the complaint. §§ 2009.13(E), 2009.14 et seq.
In 1985, the legislature adopted a "bill of rights" for nursing home residents, enforceable by DHHR and by a private civil action. La.R.S. 40:2010.6-2010.9. The legislative intent for these provisions is stated in § 2010.6:
The legislature finds that persons residing within nursing homes are isolated from the community and often lack the means to assert their rights as individual citizens. The legislature further recognizes the need for these persons to live within the least restrictive environment possible in order to retain their individuality and some personal freedom. It is therefore the intent of the legislature to preserve the dignity and personal integrity of residents of nursing homes through the recognition and declaration of rights safeguarding against encroachments upon nursing home residents' right to self-determination. It is further the intent that the provisions of R.S. 40:2010.6 through R.S. 40:2010.9 complement and do not duplicate or substitute for other survey and inspection programs regarding nursing homes. (Our emphasis.)
The four-page residents' bill of rights in § 2010.8 describes more than 20 protected rights, including the right to civil and religious liberties; the right to private and uncensored communications, flexible visiting hours, grievance procedures, and information about the resident's medical condition, proposed treatment, and proposed transfer or discharge; the right to select a personal physician; privacy in treatment and in matters of personal hygiene; freedom from mental and physical abuse, and from physical and chemical restraints except in cases of medical authorization or an emergency; the right to be treated courteously, fairly and "with the fullest measure of dignity"; and the right to reasonably use personal clothing, possessions, tobacco and alcohol.
If any of these rights are violated, the nursing home resident or his or her curator, including a curator ad hoc, may bring a civil *1286 action against the nursing home, and may recover reasonable attorney's fees, costs and damages, "in addition to and cumulative with other legal and administrative remedies" available to the resident. § 2010.9.
In addition to these civil remedies, the legislature has enacted criminal statutes dealing with cruelty to the infirm, exploitation of the infirm, sexual battery of the infirm, and abuse and neglect of adults. See La.R.S. 14:93.3-93.5 and 14:403.2. The stated purpose of § 403.2 is "to protect adults who cannot physically or mentally protect themselves and who are harmed or threatened with harm through action or inaction by themselves or by the individuals responsible for their care or by other parties[.]" Our emphasis. Several cases of cruelty to infirm residents of nursing homes or other privately operated care facilities by one or more employees of the facility have been successfully prosecuted under § 93.3: State v. Brenner, 486 So.2d 101 (La.1986); State v. Pratt, 573 So.2d 607 (La.App. 2d Cir.1991); State v. Scott, 582 So.2d 864 (La.App. 5th Cir.1991), writ denied.
In light of these varied and extensive legislative provisions that were obviously designed to prevent, and provide remedies for, the precise types of abuse alleged here, including the physical and mental abuse of Mrs. Peters while she resided in the nursing home, and the failure of her curator-son to act in her best interest after her interdiction, we must disagree with Mrs. Rachal's broad statement that "no rule for [this] particular situation can be derived from legislation," under La.C.C. art. 4.

CONCLUSION
As did the trial court, we decline to fashion an "equitable exception" to the codal scheme of survival action beneficiaries under La.C.C. art. 2315.1. We agree with the trial court's conclusion that Mrs. Rachal's survival action fails against the exceptions of no cause of action and no right of action as to both defendants in tort. The defects in Mrs. Rachal's petition, insofar as it asserts the Art. 2315.1 survival action on behalf of Mrs. Peters, cannot be removed by amendment of the petition. We disagree, however, with the court's having dismissed "all claims, demands and causes of action" of Mrs. Rachal against Max Peters and Welcare International, Inc., with prejudice, without first giving Mrs. Rachal leave to amend her petition. La. C.C.P. art. 934; Bradshaw v. State Through Dept. of Wildlife and Fisheries, 616 So.2d 799 (La.App. 2d Cir.1993), writ denied; Carter v. Exide Corp. 27,358 (La.App.2d Cir. 9/29/95), 661 So.2d 698.
The allegations in this record, though unable to overcome the survival action hurdle, reasonably suggest that Mrs. Rachal may be able to amend her petition to assert with more particularity, claims against one or both defendants for the breach of other legal or perhaps contractual duties and obligations arising from a source other than Art. 2315.1. See generally La.C.C. arts. 882 and 1493 in light of Succession of Lauga, 624 So.2d 1156 (La.1993); C.C. arts. 1757, 1765-1766, 1984; C.C. art. 2292 before its amendment in 1995; C.C.P. arts. 685, 4261-4275, 4541-4557; and R.S. 40:2010.6-2010.9, cited and discussed supra. See also and compare Hall v. Courtney, 184 La. 80, 165 So. 458 (1935); Turner v. Southern Wheel and Rim Service, Inc., 332 So.2d 770 (La.1976); Clarke v. Gowen Sanatorium, Inc., 160 So.2d 426 (La.App. 2d Cir.1964); Free v. Franklin Guest Home, Inc., 397 So.2d 47 (La.App. 2d Cir.1981), writ denied; Succession of Hearn, 412 So.2d 692 (La.App. 2d Cir.1982), writ denied; and Langendorf v. Administrators of Tulane Education Fund, 361 So.2d 905 (La.App. 4th Cir.1978), writ denied.

DECREE
We affirm the judgment insofar as it sustains the exceptions of no cause of action and no right of action against a survival action under C.C. art. 2315.1, but reverse the judgment insofar as it dismisses Mrs. Rachal's demands. We amend the judgment to allow Mrs. Rachal to amend her petition to assert with more particularity other possible causes of action within 15 days of the date this opinion becomes final, in default of which amendment Mrs. Rachal's demands may be dismissed by the trial court. We remand for that purpose. Costs are assessed one-half to Mrs. Rachal and one-half to defendants.
*1287 AFFIRMED IN PART; REVERSED IN PART; REMANDED.