McCALLUM, J.
In this tragic case, Samuel Owojori appeals a judgment sustaining an exception of no right of action and dismissing his claims related to the deaths of his son and grandson.
We affirm.
FACTS
Ashley Wilkins Owojori and Jeremiah Owojori were husband and wife. They had one child, Ezekiel Owojori, who was a minor. Ashley had two minor children, Jalynn Faith Myles and Prince Isiah Halley-Vallo, from prior relationships. Albert Myles is the father of Jalynn. Princeton Vallo is the father of Prince.
On the night of January 24, 2016, a fire caused by faulty wiring occurred at an apartment owned by GMH Housing, LLC, and occupied by Ashley, Jeremiah, Ezekiel, and Prince. All four suffered severe injuries from smoke inhalation and eventually died from their injuries
On April 20, 2016, Albert Myles, who had custody of Jalynn, filed a wrongful death suit on her behalf against XYZ Insurance Company and Gary Howell, who was GMH's agent. Albert asserted that Jalynn was Ashley's only living descendant. Albert later amended his petition to make GMH Housing a defendant.
*24 Under a separate suit number, Princeton Vallo, individually and on behalf of his late son Prince, filed suit against GMH, Howell, and XYZ Insurance on November 22, 2016. The petition was amended on February 22, 2017, to add Samuel Owojori, Jeremiah's father, as a plaintiff to recover damages for the deaths of Jeremiah and Ezekiel.
On August 31, 2017, Albert amended his petition to allege that Jalynn was the sole surviving sibling of Ezekiel and, therefore, was the proper person to bring an action seeking wrongful death and survival damages resulting from Ezekiel's death.
The lawsuits were consolidated on September 1, 2017.
On January 12, 2018, Samuel filed an exception of no right of action against the claims in Albert's amended petition. He argued that Jaylynn had no right of action for a wrongful death or survival claim related to Ezekiel's death. He contended that Ezekiel died at 4:11 p.m. on January 26, and that Jeremiah died at 12:28 p.m. on the following day.[1] Samuel maintained that because Jeremiah survived Ezekiel, Jeremiah acquired the right to bring a survival action and a wrongful death action related to Ezekiel's death, and this right passed to Samuel by inheritance when Jeremiah died.
On January 18, 2018, Albert filed an exception of no right of action. He asserted that Samuel was not the proper party to bring claims on behalf of either Jeremiah or Ezekiel because Ashley was the last of the four victims to die. In his memorandum in support of the exception, Albert operated under the assumption that Ezekiel predeceased Jeremiah. Albert argued that once Jeremiah died, Ashley acquired not only the right to assert any survival and wrongful death actions on his behalf, but also any claims that passed to him as the father of Ezekiel. He further maintained that upon Ashley's death, Jalynn, as Ashley's only surviving child, would have acquired the right to assert all claims belonging to Ashley.
Hearing on the exceptions
A hearing on the exceptions of no right of action was held on January 24, 2018. At the hearing, Albert introduced copies of the death certificates of Jeremiah, Ezekiel, and Ashley. Samuel objected to the introduction of Ezekiel's and Ashley's death certificates on the grounds that they were not certified. His objection was overruled.
Jeremiah's death certificate showed that he died at 1:34 p.m. on January 26, 2016. Ezekiel's death certificate lists January 28, 2016, as his date of death. Ashley's date of death is listed as January 29, 2016, on her death certificate.
Samuel introduced excerpts from Ezekiel's and Jeremiah's medical records at the hearing. Jeremiah's discharge summary states that he was declared brain dead at 11:30 a.m. on January 25, and that he was disconnected from the ventilator and had no pulse at 12:28 p.m. on January 27. A consultation note from January 26 states that Jeremiah was assessed for brain death that afternoon, and was found to have had brain death with complete and permanent loss of brain function.
Ezekiel's discharge summary states that a brain death exam performed on January 25, 2016, was completely consistent with brain death. A second exam done on January 26[2] was also consistent with brain *25 death. Ezekiel was pronounced dead at 4:11 p.m. on January 26, but his body remained on a ventilator for possible organ donation. It was noted in his discharge summary that of the four victims, three had progressed to brain death while only Ashley was taking agonal breaths as of earlier that day. A consultation note from January 26 states that the clinical examination was consistent with brain death.
Albert testified at the hearing that Ashley was treated at University Hospital in Shreveport, while Jeremiah and Ezekiel were treated at St. Francis Hospital in Monroe. Albert asserted that he had visited Jeremiah in the hospital, and that January 26 was accurate as the date of Jeremiah's death. He maintained that he knew that Jeremiah died before Ezekiel because he went to visit Jeremiah on the day that he died, and then he learned Ezekiel died during a later visit to the hospital. Albert further maintained that he had no doubt that Ashley was still alive after Jeremiah, Ezekiel, and Prince had died. He believed that the date of death listed on her death certificate is consistent with his understanding of what had happened. Finally, he stated that he last saw Ashley alive at the hospital on January 29 before being told later that evening by a hospital staff member that Ashley had died.
Cassandra Gipson is an aunt of Princeton Vallo and, thus, also a great-aunt of Prince. Gipson, who stayed at the hospital with Prince, testified that she believed Prince died on January 27. She also testified that she knew Ashley was the last to die of the four because they were waiting on her death in order to make funeral arrangements for Ezekiel and Prince. She also recalled seeing Ashley in the hospital before she left following Prince's death. Gipson also asserted that Ezekiel had died before Prince.
The trial court granted Albert's exception of no right of action, and denied Samuel's exception of no right of action. Accordingly, Samuel's claims, individually and on behalf of Jeremiah and Ezekiel, were dismissed.
Samuel has appealed.
DISCUSSION
Samuel argues on appeal that: (1) the trial court should not have relied on uncertified death certificates to determine the order of death; (2) the trial court erred in granting the exception because Jeremiah acquired the right to assert a survival action and a wrongful death action related to Ezekiel's death when he survived Ezekiel, and these rights passed to Samuel by inheritance when Jeremiah died shortly after Ezekiel; and (3) the trial court erred in even considering Albert's exception of no right of action because, as claimed by Samuel, Albert did not file a written exception of no right of action. We find each argument to be without merit.
Applicable law
An action can be brought only by a person having a real and actual interest which he asserts. La. C.C.P. art. 681. The function of an exception of no right of action is to determine whether a plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the petition. La. C.C.P. art. 927 ; Turner v. Busby , 2003-3444 (La. 9/9/04), 883 So.2d 412. The exception of no right of action serves to question whether the plaintiff in the particular case is a member of the *26 class of persons that has a legal interest in the subject matter of the litigation. Id.
The exception of no right of action presents a question of law; therefore, an appellate court conducts a de novo review of the trial court's action on this exception. Waggoner v. America First Ins. , 42,863 (La. App. 2 Cir. 1/16/08), 975 So.2d 110.
To recover under a claim for wrongful death and survival damages, a plaintiff must fall within the class of persons designated as a beneficiary under La. C.C. arts. 2315.1 and 2315.2. Turner v. Busby , supra . The primary category under both wrongful death and survival actions includes "children" of the decedent. Reese v. State Dept. of Pub.Safety & Corr. , 2003-1615 (La. 2/20/04), 866 So.2d 244.
A survival action is "transmitted to beneficiaries upon the victim's death and permits recovery only for the damages suffered by the victim from the time of injury to the moment of death." Taylor v. Giddens , 618 So.2d 834, 840 (La. 1993). Regarding survival actions, La. C.C. art. 2315.1 sets out the order of claimants. It reads, in part:
A. If a person who has been injured by an offense or quasi offense dies, the right to recover all damages for injury to that person, his property or otherwise, caused by the offense or quasi offense, shall survive for a period of one year from the death of the deceased in favor of:
(1) The surviving spouse and child or children of the deceased, or either the spouse or the child or children.
(2) The surviving father and mother of the deceased, or either of them if he left no spouse or child surviving.
(3) The surviving brothers and sisters of the deceased, or any of them, if he left no spouse, child, or parent surviving.
(4) The surviving grandfathers and grandmothers of the deceased, or any of them, if he left no spouse, child, parent, or sibling surviving.
*27 B. In addition, the right to recover all damages for injury to the deceased, his property or otherwise, caused by the offense or quasi offense, may be urged by the deceased's succession representative in the absence of any class of beneficiary set out in Paragraph A.
C. The right of action granted under this Article is heritable, but the inheritance of it neither interrupts nor prolongs the prescriptive period defined in this Article.
A wrongful death action is a separate action from a survival action and it "does not arise until the victim dies and it compensates the beneficiaries for their own injuries which they suffer from the moment of the victim's death and thereafter." Taylor , supra at 840,. Regarding wrongful death actions, La. C.C. art. 2315.2 sets out the order of claimants. It reads, in part:
A. If a person dies due to the fault of another, suit may be brought by the following persons to recover damages which they sustained as a result of the death:
(1) The surviving spouse and child or children of the deceased, or either the spouse or the child or children.
(2) The surviving father and mother of the deceased, or either of them if he left no spouse or child surviving.
(3) The surviving brothers and sisters of the deceased, or any of them, if he left no spouse, child, or parent surviving.
(4) The surviving grandfathers and grandmothers of the deceased, or any of them, if he left no spouse, child, parent, or sibling surviving.
B. The right of action granted by this Article prescribes one year from the death of the deceased.
C. The right of action granted under this Article is heritable, but the inheritance of it neither interrupts nor prolongs the prescriptive period defined in this Article.
Order of death
A definition of death is provided in La. R.S. 9:111, which states:
A. A person will be considered dead if in the announced opinion of a physician, duly licensed in the state of Louisiana based on ordinary standards of approved medical practice, the person has experienced an irreversible cessation of spontaneous respiratory and circulatory functions. In the event that artificial means of support preclude a determination that these functions have ceased, a person will be considered dead if in the announced opinion of a physician, duly licensed in the state of Louisiana based upon ordinary standards of approved medical practice, the person has experienced an irreversible total cessation of brain function. Death will have occurred at the time when the relevant functions ceased. In any case when organs are to be used in a transplant, then an additional physician, duly licensed in the state of Louisiana not a member of the transplant team, must make the pronouncement of death unless a hospital has adopted a written policy allowing that a single physician, duly licensed in the state of Louisiana, not a member of the transplant team, may make the pronouncement of death. In all cases in which a hospital written policy provides that a single physician makes the pronouncement of death, such policy shall also require an opinion by a second physician, not a member of the transplant team, as to the candidacy of the person for the process of organ donation.
B. The medical pronouncement of death by a coroner may also be based on personal observation, information, or statements obtained from coroner investigators, registered nurses, physician assistants, or emergency medical technicians at the scene who are reporting from firsthand observation of the physical condition of the deceased. The time of death shall be reported as the time that the death was reported or discovered. The name of the personnel that the coroner is relying on shall be noted on the coroner's investigative report.
The death certificates establish that Jeremiah died on January 26, Ezekiel died on January 28, and Ashley died on January 29. Samuel objected to the consideration of Ezekiel's and Ashley's death certificates because they were not certified. Nevertheless, public vital statistics records are presumed to be correct subject to rebuttal by evidence to the contrary.[3] State ex rel. Lytell v. Louisiana State Bd. of Health through Rein , 153 So.2d 498 (La. App. 4 Cir. 1963), writ denied , 244 La. 1000, 156 So.2d 55 (La. 1963). Moreover, the order of death in the death certificates is consistent with the testimony from the hearing as well as with the excerpts from the medical records. We also note that while the death certificates for Jeremiah and Ezekiel contain death dates that may differ from the dates of brain death or death declaration in the excerpts, Jeremiah and Ezekiel were kept on ventilators *28 even after brain death, presumably for the purposes of organ donation.[4]
Jeremiah was declared brain dead at 11:30 a.m. on January 25. A brain death assessment on the afternoon of January 26 showed brain death with complete and permanent loss of brain function. He was disconnected from the ventilator and had no pulse at 12:28 p.m. on January 27.
A brain death exam performed on Ezekiel on January 25 was "completely consistent" with brain death. A second exam done the following day was again consistent with brain death. Ezekiel was pronounced dead at 4:11 p.m. on January 26, but his body remained on a ventilator for possible organ donation.
We also note that it is stated in Ezekiel's discharge summary that of the four fire victims, three had progressed to brain death and that only Ashley was taking "agonal breaths" as of earlier that day. Agonal breathing is defined as gasping. Finally, the order of death was also corroborated by the testimony of Albert and Gipson. Albert stated that he had visited the victims at the hospital, and that Jeremiah died before Ezekiel. He also stated that Ashley outlived Jeremiah, Ezekiel, and Prince. Gipson testified that she knew Ashley was the last to die, and that Ezekiel died before Prince.
Application of arts. 2315.1 and 2315.2
In Rachal v. Peters , 28,655 (La. App. 2 Cir. 9/25/96), 680 So.2d 1280, a granddaughter of the deceased brought a survival action against her uncle and a nursing home where the grandmother was housed. In affirming the judgment sustaining the exception of no right of action, this Court noted:
As we appreciate the law, it is only when the codal beneficiary who survives the decedent later dies that the beneficiary's heir "inherits" the beneficiary's right to bring either or both the wrongful death and survival actions. Arts. 2315.1(C) and 2315.2(C).
Id. at p. 4, 680 So.2d at 1283.
In Jackson v. Estate of Jones , 39,056 (La. App. 2 Cir. 10/27/04), 887 So.2d 618, writ denied , 2004-2907 (La. 2/4/05), 893 So.2d 874, a woman who was killed in an auto accident had two predeceased siblings, but was survived by a brother. Her nieces and nephews who were children of the predeceased siblings sought wrongful death damages as the result of their aunt's death. They argued that as intestate heirs of their aunt, they had the right to represent their deceased parents in the lawsuit. Citing Rachal v. Peters , supra , this Court rejected that argument. This Court concluded that their parents, through whom they attempted to inherit this right of action, were required to survive the victim in order for their right of action to come into existence. It was further noted that had their parents survived the victim and then died, the right of action would have passed to them.
In light of the foregoing, the right to bring a survival action and/or wrongful death action resulting from Jeremiah's death belonged to Ashley, as surviving spouse, and to Ezekiel, as surviving child. The right to bring a survival action and/or wrongful death action resulting from Ezekiel's death belonged to Ashley. Upon the deaths of the codal beneficiaries, their rights to bring these actions passed to their heirs.[5] Accordingly, Samuel lacked a *29 right of action to bring claims relating to either Jeremiah's or Ezekiel's death. Accordingly, Albert's exception of no right of action was properly granted.
Finally, Samuel argues that Albert's exception was not properly before the trial court because a written exception regarding Jeremiah's claims was never filed. That is incorrect. The record reflects that Albert filed his written exception of no right of action on January 18, 2018, and he asserted in the exception that Samuel was not the proper party to bring claims on behalf of either Jeremiah or Ezekiel.
CONCLUSION
At Samuel's costs, we affirm the judgment denying Samuel's exception of no right of action, sustaining Albert's exception of no right of action, and dismissing Samuel's petition for damages individually and on behalf of Jeremiah and Ezekiel.
AFFIRMED.

The relevant times appear in the medical records in the military time format.

The discharge summary states that the second exam performed by a Dr. Pena was done "today" and that Ezekiel was pronounced dead at "16:11 today." "Today" is likely in reference to January 26 because the consultation note from Dr. Pena lists January 26 as the service date. Moreover, the date of January 25 is specifically mentioned in the discharge summary.

We recognize that Ashley's death certificate states incorrectly that she died at St. Francis Medical Center in Monroe.

Jeremiah's relatives in Nigeria declined organ donation. Whether or not Ezekiel's organs were donated cannot be determined from the excerpts.

Although Gipson testified that Ezekiel died before Prince, it is not clear from the record where Prince falls in the order of death other than that Ashley survived him.